v. Hurricane Shoals Entities and Khalid Sattari. Counsel, if you would begin, this would be Ms. Jempol. Thank you. Did I pronounce your name correctly? Yes. Okay. Thank you. May it please the Court. My name is Melissa Jempol and I represent the Hurricane Shoals Entities, which I'm now going to go through so that it's clear on the record, Alpha Medical Consulting, Inc., Clio Laboratories, LLC, Elite Medical Laboratories, Inc., Performance Laboratories, LLC, Lazarus Services, LLC, and Genos Medical, Inc. Your Honor, we stand before you today at the appellant's respectfully request that the magistrate judge's March 4, 2022, order be reversed and the matter be remanded back to the district court with instructions for the government's filter team to claw back the entirety of appellant's materials that is produced to Mr. Fluitt. Despite holding that appellants were not bound or subject to the protocol order entered in this case that was entered without any input from appellants, the magistrate judge erroneously used the appellant's alleged failure to meet the order's structures regarding privilege assertions as a basis to order the government to produce appellant's privileged material to Mr. Fluitt over appellant's objection. Counsel, to be clear, the Hurricane Shoals entities which you've just listed are asserting an independent privilege aside from that of the individual? Yes, Your Honor. They were fully operating entities. They were businesses. The materials in question concerned matters involving taxes, their tax treatment, their employment disputes that were going on, litigation in courtrooms, and the materials were seized from a general counsel's office at Alpha Medical Consulting which is located in Georgia. So separate privilege from Mr. Sotari's. The magistrate judge's order compelling the filter team to produce appellant's more than 25,000 privileged documents to Mr. Fluitt was an error. A court's authority to order the production of documents is not limitless. It must be grounded in a source. The magistrate's broad and unprecedented order here exceeded what would otherwise be provided and allowable in Rules 16 and 17C of the Federal Rules of Criminal Procedure. Rule 16A1, large E, allows the government to produce documents which it lawfully possesses. And as the Hurricane Shull entities have repeatedly said, there's no proof that the government lawfully possessed these materials. Rule 17C prevents a defendant from obtaining documents from a third party without the showing of need and relevancy to his defense. And Hurricane Shull's argument has always been, since the inception of appearing before the district court in this case, that Mr. Fluitt could have used a Rule 17C subpoena to meet the objectives that he wanted. And that would have afforded the Hurricane Shull's entities the adequate protections here because Mr. Fluitt would have had to have proven some relevancy to his case. And in fact, that has never been shown. In any of the briefing that is before Your Honors, there is no reason why Mr. Fluitt needs 25,000 of these emails that were seized by the government. Counsel, to what extent do we have before us the scope of the warrant, the scope of the documents that are collected, in other words, what the government did to obtain the documents? Is that part of what you're arguing, or are we arguing here, the actual production of them to Mr. Fluitt? So Your Honor, it would be improper for this court to consider the search and seizure arguments because that is not before this court. The reason for it being relevant to this court and the thrux of our argument is that the government did not have the ability to produce them because the legality of the Fourth Amendment search and Rule 41E of the Federal Rules of Criminal Procedure had not been complied with prior to the production of these materials. So by implication, though, we do have to consider that, don't we, that the government is in possession of your client's documents improperly through some improper or unconstitutional search and seizure? Isn't that part of what you're arguing? Your Honor, I couldn't order the district court to conduct such an inquiry, Your Honor, because it's not the role of an appellate court to do such a thing. However, the record is very clear that the government did not comply with Rule 41E. It is never said that it complied with Rule 41E, and it is never said that it completed the second step, which is unfathomable in the almost four years that these materials were seized. They were seized on September 27th of 2019. And in fact, if you look at the government's brief in this particular matter, on page 7, they indicate that they continue to keep searching through these materials without any regard. This is the filter team, too, without any regard or any mention of the Fourth Amendment. In neither Mr. Fluitt nor the government's briefs, the word Fourth Amendment never appears, which is astounding given that that's the basis for our claim that the materials never should have been distributed until a determination was made at a beginning level. To what extent are we impacted by the dismissal of the motion next door in the Eastern District of Louisiana, the 41G motion that was dismissed without prejudice because of the absence of Mr. Sitari? To what extent does that impact what we do in this case? Your Honor, that actually makes some of our arguments stronger here because it gives this court jurisdiction over this case in a way that is indisputable. So both the government and Mr. Fluitt spend a lot of time in their briefing not mentioning the Fourth Amendment but mentioning jurisdiction. And this is the only avenue that the Hurricane Shoals entities have right now for their injuries to be redressed. But could your clients appeal the dismissal without prejudice from the Eastern District of Louisiana? I think the time frame has run out on that, Your Honor. So they would be time-barred in doing that. They could have, though. They could have theoretically, but as they stand before this court today, the time period has run out on that appeal, and this is the only avenue for redress of the injury. Interestingly enough, Your Honor, and I think a key part of the argument is if you actually look at the order that the magistrate judge brought before on March 4, 2022, the magistrate order found that the government, meaning the filter team, was ready, willing, and able to provide Mr. Fluitt with the materials at issue. And that's record on appeal 7123. But the thrux of our argument is that they were not able to appeal. And in fact, their willingness shows the fact that this entire filter procedure is flawed, is a classic case of the fox guarding the hen house to bring up a tried adage, but one in which is very apropos in the number of cases that have found that filter teams are outside of their bounds. And in here, the way in which the filter team was constructed, it was a bureaucratic machine without any connection to reality. And this is the argument that the Hurricane Shoals entities made down below. There was no thought of the 25,000 materials that were provided to Mr. Fluitt that any of them could be privileged because of the blind adherence to some view that the plurivis logs were incomplete. But as the Hurricane Shoals entities argued down below, over 1,000 of those e-mails came from my law firm to the Hurricane Shoals entities. Criminal Defense Counsel, they were obvious on their face that they were not, that they were privileged and that privilege log or no privilege log. The job of a filter team is to ensure that the sanctity of the attorney-client privilege is upheld. Going back to the Supreme Court and the numerous times in which it's discussed the importance of attorney-client privilege and the right of an entity or an individual to have Sixth Amendment counsel to be able to provide free and unfettered consultation with their attorneys, especially when the Department of Justice is investigating you. But there was no discussion of that. It was ready, willing, and able. Here you go. There's no tie-in to common sense in terms of the procedure that was used here. And that is the particular issue that we raised from the inception of this, is that because the warrant was not adhered to, was not returned properly, the second step was not completed, the irrelevant e-mails that are the essence of the attorney-client privilege, the ability to talk to your own attorney, was completely disregarded by the Department of Justice. In fact, it's astounding what happened here. And it's still happening because they indicate on page 8 of the government's brief that they intend to hold on to these materials and keep searching them and researching them in violation of the Fourth Amendment until all relevant cases, what they consider relevant cases, are done with. And this Court is the opportunity to put a halt to this, to say, this is not the purpose of what a filter team is. This is not the way in which a Department of Justice filter team should be constructed. And that has been the argument that we have had, both in the Sitari case and below in this particular matter, that the filter team was improperly composed of because it failed to consider the fact that this warrant had not been returned. Now, I will say this case is without a doubt a unique procedural posture, and I think that this Court's questions have certainly touched upon that. But unique does not mean that it falls outside the well-defined scope of appellate jurisdiction under the Perlman Doctrine. This Court must consider that we are only in this procedural situation because of the government's backwards and illogical approach to its obligations. The government chose to distribute materials taken from a search warrant before assessing whether those materials were lawfully seized from the scope of the search warrant. And that odd decision by the government has cascaded out and leads to a situation where these issues are now properly appealed and properly before this Court. Counsel, let me ask you about... I understood part of your argument in the brief to be that the magistrate judge improperly converted the motion to compel against your clients to a motion to compel against the government and then ruled on the motion on that basis. What is your best case or your authority that that was an improper procedural device? Yes, Your Honor. So, first of all, our argument is that the magistrate judge correctly concluded that the protocol order cannot impose responsibilities on appellants who are not parties to it. They didn't operate in the district. They didn't conduct any business in the district. And those were the arguments that were made to the district court. But the error is that the magistrate judge then looked at the privilege logs and said that they were insufficient, which is contradictory to the Hurricane Shoals entities not being party to the litigation. And those two findings are inconsistent and in error, and those are a basis for this Court to reverse and remand back to the district court. Because the magistrate judge found that appellants were not bound by the protocol order, then the necessary conclusion follows that appellants did not assume any obligation in the first place to produce satisfactory privilege logs, and the protocol order could not be used to vitiate their privilege. Aren't privilege logs used generally, whether there's a protocol order or protective order or whatnot? Don't we generally use privilege logs all the time on document productions? Yes, Your Honor, and this is not a case where no privilege log was produced. This was a case... The adequacy of it. The adequacy was in doubt. And as I indicated, the Court didn't find 1,000 of these that went to this particular law firm, appellant's law firm, were adequate, but these 24,000 other ones were not, or ones that clearly indicate... Because the ray line of each e-mail chain is there, and in the ray lines coming from my law firm, the vast majority of the time, it indicates attorney-client privilege and confidential in the ray line. That at least gives the Court something to believe that these are privileged, and it didn't conduct a further inquiry into that. The Court didn't do an in-camera inspection of documents? No. It ruled on the privilege log, on the face of the privilege log? No, Your Honor. And part of this has to do with the sheer number that we're talking about here, which is normally courts, district courts, and the cases that have become before this Court involve a very manageable amount of documents that the parties are disputing. But because of the way in which the government conducted this entire process and didn't return the warrant under Rule 41e and didn't complete the second step, there was many, many, many privileged e-mails that had nothing whatsoever to do with the allegations in either Mr. Fluitt's indictment or Mr. Sitari's indictment. Okay, counsel. Thank you. We... You have some time for rebuttal? Thank you, yes. We will now hear from, I believe, Mr. Meyer. May it please the Court, my name is Ryan Meyer and I'm here for Appellee George M. Fluitt III. We believe the Court should affirm the lower court's orders both Magistrate Judge McCluskey's order from March of 2022 as well as District Judge Dowdy's acceptance of that order and the earlier panel that ruled on the motion to stay in this matter. We believe that those orders' compelling production of Khalid Sitari and the Hurricane Shoals entities' materials should be affirmed for three reasons. The appellants have waived any privileged argument they could possibly have had because of the deficiency of the privilege logs and the period of time over which that has occurred. The appellants lack standing to even bring this appeal in the first place, and at least with respect to Mr. Sitari, the Fugitive Disentitlement Doctrine warrants the dismissal of his appeal. Speaking briefly with respect to Appellant Sitari, he's a fugitive, he's been a fugitive now for, I believe, about six months, and as such, he cannot call on the resources of this Court. The Court, under a variety of case law, including Maglita v. Samples, analyzes that kind of dismissal with three standards, whether he's a fugitive and whether that status connects to this appeal and whether the dismissal would effectuate the concerns underlying the doctrine. He's very obviously a fugitive, and that status does connect to this appeal. He's a fugitive from his ongoing prosecution in the Eastern District of Louisiana, which is that prosecution is what led to the seizures, which led to the document productions at issue today, and in particular, it's the prejudice that would occur if his appeal is upheld. Not only would the documents be clawed back, but even if his appeal was allowed to proceed and some number of the documents were kept by us, as Mr. Fluitt's counsel, the Supplementary Protective Order issued by the Court, which is the Record on Appeal at 7265 to 7266, sets forth a process where before we as counsel for Mr. Fluitt use any of these potentially privileged documents, and to be clear, no one here acknowledges or argues that these documents are privileged other than the Hurricane Shulz entities, but these potentially privileged documents, before we could use them in a motion or use them at trial during Mr. Fluitt's defense, we would have to go through a process that included giving notice to the Hurricane Shulz entities and Mr. Sitari, giving them an opportunity to be heard in front of the Court, and then providing District Judge Doty an opportunity for in-camera inspection of each one of those documents. Obviously, that is going to be a time-intensive process, and if Mr. Sitari is a fugitive, he cannot participate in that process, which is going to only lead to further delay. And just to give a sense of delay, we have been arguing this issue with the Hurricane Shulz entities since January of 2021. So we're now 2 1⁄2 years into this. But I think the more important issue, at least from our perspective here, is just the deficiency of the logs and the fact that the appellants have waived any privilege that they might have been able to claim over these materials. As you noted, Judge Engelhardt, privilege logs are very common. These are woefully deficient. There is no description of the privileges at issue. There's no description of what litigation the attorney work product might have related to, what concept even that the attorney-client privilege was being utilized to correspond about. A number of these documents include third parties like banks, vendors, right, parties that you're generally not having communications with. The Hurricane Shulz entities have alleged that those communications are protected by the common-interest privilege, but they have not specified how many common-interest agreements they've had, who the members of those agreements are, the scope of those agreements, whether in time period or materiality, and to give this panel a sense of the seriousness with which they engaged in this, the Hurricane Shulz entities have withheld six documents on the basis of marital privilege. Obviously, the six entities that comprise the Hurricane Shulz entities do not have a marital privilege that they can exercise. And I think one of the things I also wanted to clear up is Ms. Jampol discussed at length that the privilege logs were provided to Fluid and those are the basis that got all of this rolling. That's true, but these privilege logs were provided as a secondary matter to us as counsel for Mr. Fluid. These privilege logs... ...the documents from the entities and Mr. Satari, isn't that correct? Yes, Your Honor, that's correct. And in so doing, you satisfied the requirements of Rule 17C, the 17C subpoena? No, Your Honor, we proceeded on the basis that these were relevant under Rule 16 because the government was the only entity that had access to the substance of these documents. The government had provided notice to us that these documents were relevant to both their prosecution and potentially Mr. Fluid's defense under Rule 16. The protocol that was entered by the court in the Western District, which is similar to the protocol entered by the Eastern District of Louisiana and Mr. Satari's own prosecution, that protocol gave us the opportunity to compel Mr. Satari and the Hurricane Shulz entities. But they're not... I mean, we go to great lengths in the briefs to say that they're not a party. In fact, you said when you first got up that you have questions about whether they even have standing to be here. Yes, Your Honor. They're not a party to the agreement, so they're not within the scope of a Rule 16 disclosure, correct? That is correct, Your Honor. And you're aware, your client's aware that they're asserting some type of either privilege or that the documents were improperly obtained due to the scope of the warrant, the search and seizure issue. Why would you not have to go through the Rule 17 subpoena process to get them directly from the corporate entities? Yes, Your Honor. The reason we did not do that here is because the documents were in the possession, custody, or control of the United States. And under Rule 16, the government had determined that they were responsive enough under Rule 16 that the government was obligated to produce them to us. What if the government was wrong? What if they have documents that they're not entitled to? Isn't that part of what we have arguing today? That is not something that we as Mr. Fluitt's counsel had insight into at the time that we were filing these motions, or quite frankly have insight into now. What we have are thousands of documents that the government, who has been able to review them, has determined are potentially relevant either to Mr. Fluitt's prosecution or his defense. We cannot, we as defense counsel for Mr. Fluitt, cannot take Mr. Cetari's defense counsel's just trust me word on it, that those documents are not actually relevant. We know that there is a co-conspirator in common, as the government has alleged the conspiracies against Mr. Cetari and Mr. Fluitt. We believe there's at least one other witness that will also, were Mr. Cetari to return and go to trial, would also testify likely against both individuals. There may be more once we have the government's witness disclosures in this case. There obviously may be more as we prepare to bring Mr. Fluitt's defense to trial. Given that the government had these documents and identified that they had them, we pursued them in the way that we understood was appropriate at the time given the law of our case. To the extent that there were concerns, the Hurricane Shoals entities or Mr. Cetari individually had concerns about the search and seizure of his documents and the entities' documents in September of 19, I would have expected them to bring 41G motion and a motion to suppress, which they did two years later. Ms. Jampol and I have been speaking about this case since January of 2021. I would have assumed that they would have brought those much sooner, given the seizure issues would have been known and as this court's case law and I think every circuit's case law points out, it's the privilege holder's responsibility to protect their privilege and to do so zealously. Harbor Health Care appears a number of times, I think, in everyone's briefs in this case. It's obviously an important case for defense attorneys. I think it's very instructive. The privilege holder there spent years litigating with the government, moving as quickly as possible to zealously protect their privilege. Here the Hurricane Shoals entities did not do that. They waited two years to file a motion for a turn of property under 41G and with respect to the privilege logs, they provided deficient privilege logs to the government in their own case in the Eastern District of Louisiana. Those were provided to us as a second matter, but in the initial instance, they were providing deficient privilege logs that could not possibly protect their privilege. They didn't identify anything about the privilege of the supposed privileged nature of those communications. They didn't identify anything with respect to the content of the communications that's required under EEOC BDO and the other longstanding precedents of this court and under the Federal Rules of Civil Procedure. They made a determination at the beginning, a strategic decision not to engage in this process with the government and they have been spending two and a half years trying to avoid the consequences of those actions. With respect to their standing, they could have moved to intervene formally. They were provided notice, according to the government and the government's filings in the district court action, they were provided notice of the protocol when it was entered. At least the proposed version was identical to the version entered in the Eastern District of Louisiana and Mr. Sitari's main case. The Hurricane Shoals entities formally intervened in Mr. Sitari's case and both the Hurricane Shoals entities and Mr. Sitari formally intervened in another case in the Middle District of Louisiana, USV Hanley. They could have intervened here. They made, again, the strategic determination not to do so, to refuse to be bound by the law of the case, but at the same time to try to be one step removed and argue that no one could assert jurisdiction over them and no one could possibly decide what to do with these deficient documents. And again, Your Honor, I would just emphasize the practicalities of this matter that these are communications, some number of which involve a co-conspirator, some number of which involve another potential witness against Mr. Fluitt, the only people that have the ability to judge the relevance of these communications at the time these motions were going on were the government and the Hurricane Shoals entities and the government under Rule 16 determined that they were responsive. All right. I see that my time has concluded and if the panel does not have any other questions, I'll step back. Thank you, Counsel. Thank you, Your Honors. Mr. Michaels? Good morning. May it please the Court, Steve Michaels for the government. Your Honor, this is a case at this stage that really is about forfeiture. The motions panel used that language in determining not to issue a stay, which really was the signature moment in this case. And as a consequence of your colleague's action in denying the stay, we did produce the documents to Mr. Fluitt. Those documents are under very tight procedures under Docket 93 in the District Court. And you may see this case again if the documents enter into the public domain. But they're not there now. And Mr. Ryan is under his warning that he's to treat these documents as potentially subject to further claims. Ms. Jampol has another chance to argue privilege in front of Judge Dowdy. There has to be a one-by-one, in-camera process. But as to where we are today, we are here today because of the appellant's forfeitures. And, Your Honor, I was planning to say that everything you need to know about this case is set forth in that footnote which Judge Engelhardt, you referred to in the reply brief. Namely, that when Judge Vitter issued an across-the-board docket clearing order when Mr. Sitari became a fugitive, that she denied everyone's motions without prejudice. Well, there is a remedy. And the remedy lies in this building. They could have appealed to Your Honors. They could have sought a writ of mandamus to compel the Court if the Court had jurisdiction to rule on the Rule 41G motion to act. That's a, what I call a narrow mandamus motion, not uncommon sometimes when there's delay. They could have moved Judge Vitter herself to reconsider. They didn't do that. The collateral order doctrine in the case has conceded, has run on that. Our position on the main jurisdictional question under the Pearlman case, and really this has always been the law, it's been in Pearlman from the beginning, that you don't have a Pearlman appeal unless it's impossible to get relief as a non-possessory party privilege holder. And our position all the way along, the government obviously opposed the Rule 41G motion, and I'm happy to talk about those merits in a bit, is that the Western District of Louisiana is not a district of seizure. The Rule 41G motion was properly convened in the Eastern District of Louisiana and consolidated under some case law that allows consolidation so we have just one judge in a motion, and that's where those issues should have been heard if at all. We never got a motion to expedite from them for Judge Vitter's consideration. We never got a writ of mandamus demanding that she act on that motion, and that's where we are today. The issue downstairs in the Western District of Louisiana was whether there should be a stay of the consideration of the motion to compel pending action in the Eastern District. We believe that Judge McCluskey properly exercised her stay equities process in dealing with that. It had been going on for a long time. There would be restrictions on the documents when they went over to Mr. Meyer. We made sure there were even more restrictions in Docket 93 when we filed that motion. So, that issue wasn't even brought up before the motions panel, and now we're in a situation where the documents have been produced. Because there was a remedy, no Pearlman appeal. Even if there wasn't a Pearlman appeal, it's moot. Yes, a clawback has been thrown out as a possible Article 3 remedy, and in the broad theoretical sense, yes, you could order it. It could be done. It's something that could be done, but that's not the way the courts of appeals deal with Pearlman mootness. Once the documents go over, the pressure on me as the filter attorney is gone. The purpose of a Pearlman appeal is to take the pressure off me, the possessor of the documents, and let Your Honors adjudicate that, which essentially was done last year at the stay stage of the case. So, we have no Pearlman appeal, a moot Pearlman appeal. The collateral order doctrine is a non-starter in this case, as the court will be familiar from the case law that's been cited. Collateral order appeals in criminal matters are limited to denial of bail, double jeopardy, speech or debate, those kinds of qualified immunity-type issues that get treatment in the courts of appeals under the collateral order doctrine. So, I want to just spend a minute on the party issue, the Martino v. Ortiz issue, because this is an unusual circumstance. Ms. Jampol has argued consistently that they're not bound, they weren't given a chance to be heard, they're really non-parties to this, and they're under no obligation. And Judge McCluskey, listening to that and understanding how the system is supposed to work, the cases that we cited, Miller v. Alamo, Blackman v. District of Columbia, this is sort of obvious stuff, that when you intervene in a case, you take the law of the case that comes to you. And by failing to really play by the rules of being an intervener, I think that they opened themselves up to the ruling that Judge McCluskey gave on the threshold issue. And there's fairness in this too, because if they are not bound, and we have a two-finding ruling in our favor, the consequence is the ruling on privilege laws is not collateral estoppel, we can't invoke that in other places because we have, under the restatement of judgments, we've got two findings, one of which is jurisdictional, and one of which is not, and we can't run this someplace else. So they can argue their privilege issues in other cases, they can bring them up again, not just in the order here, but in other cases. I understand your argument on the threshold issues, and I want to make sure that you had a chance to make them, but at some point I would like to at least hear something that doesn't appear in the government's brief, which is a response to the Rule 41e arguments that are thrust over and over and over again. Absolutely, and obviously we cited to, and the prosecution team put in a lengthy memo in front of Judge Bader, we've cited to its location, we commend it to. But if I had one sentence to respond, Judge Oldham, to your concern, this is a money laundering case. The United States v. Sitari is a conspiracy to commit money laundering, and every dime that was spent by these companies is relevant to those issues. All the money they spent on lawyers, all the money they spent on their business problems. So we are very, very mindful of our Rule 41 duties, the government as a whole. We believe we're in compliance with them. It's a complex case. There's 25 million documents that were produced in the United States v. Sitari. It's a no search term limited case, and this is in part because of what Mr. Sitari's attorneys wanted. There's two ways for us to go in these large document cases. We can come to an agreement, the government writ large can come to an agreement with the defense that will limit all the discovery by search terms. This was not what Mr. Sitari wanted. This is a no search term limited case, so you get it all, and this Court's decision in the United States v. Skilling comes into play there. We give them the index, everybody can search it, everybody has their autonomy to present their defense in the best way possible. Every one of these cases has potential advice of counsel defenses. So relevant certainly to the case, relevant to the issues that are implicated,  counsel were raising the prospect of raising an advice of counsel defense, in which case it all would have been sprung under the normal orders. So we're very comfortable that the denial of the stay, which is the little issue that may be still left by its tendrils in this case, was properly handled by Judge McCluskey, by Judge Dowdy, by your three predecessors at the motion stage, and therefore we think we're on good ground there. We're confident of our position. I'll tell you this, Your Honor, we look at the Harbor Health Care case every week. We understand what the concern was of the court there. The search warrants in this case, unlike those in Harbor Health Care, demanded that there be a filter team. So we feel that we're in good shape in this case. We would ask the court to dismiss the appeal, dismiss Mr. McCluskey's legitimate disentitlement, and affirm for the other reasons that we've set forth. I have 20 seconds left, but I think that's my argument. Thank you, Your Honor. We won't deduct any points for not using the entire amount of time. If you don't need it, you can give it back. Okay. On rebuttal, Ms. Drempel? Thank you. Judge Oldham, I want to go back to the question that you asked the government right before this about the Fourth Amendment. The response from the government is telling. They said it's a money laundering case. There's no exception to Rule 41E for money laundering. There's no exception to the Fourth Amendment, and there's no exception to the Sixth Amendment right to counsel because you're charged with the government's interpretation. Folks from Washington fly in from a special unit created for filter teams now, and they blindly impose the same protocol order over and over again on every single circumstance. The argument that Hurricane Shell's entities have made from the beginning is that they're differently situated because their search warrants were not complied with under the Constitution of Rule 41E. Today, you've heard no answer to that particular issue. Those were the issues that were raised below, and neither the magistrate court nor the district court addressed those issues. They did not address the privilege issues, which are the centerpiece of our argument here. In fact, it was an error for them to disregard the importance of the attorney-client privilege, and that is what the focus of our argument is here. We're hearing now for the first time in this court that Mr. Cetari rejected search terms. That's not in the record before you. There's a lot of things that are happening in this oral argument that are not based on the record, but the record is clear that there were 25,000 emails here that were inexplicably turned over to Mr. Fluitt. 25 million? You're supposed to do an accurate privilege log for every single entry? We'll all be here until we're in the grave. The way in which the Department of Justice is going about these filter teams, and this court was exactly on harbor health care. Granted, the district court in harbor health care excuse me, the magistrate court in approving the search warrants in harbor health care did not include the filter team aspect when you write the search warrant, but just because when someone's writing a search warrant, they put in a filter team process and they ask the magistrate judge to approve that process does not mean then everything the filter team does is correct or that the filter team is allowed to go to the well again and again and again. It leads back to what I argued on my initial remarks to this court which is it's a fox guarding the hen house. So they read harbor health care every day. That doesn't mean they're abiding by it. That doesn't mean that the exact same concerns that were raised under harbor health care are the ones here. And it's a radical turnabout from the government because the prosecution Department of Justice attorney in the October 5th 2021 hearing which starts in record on appeal 7301 said three times in a row that the materials that were taken from Hurricane Shoals were quote pretty far afield from the core of the case against Mr. Fluitt. He also said we made the decision to turn this over under rule 16, but that shouldn't be taken as the government believing that this material is really central to the case. But he kept going. And then he said this is pretty far afield from what we think the central core of the government's case is going to be. That's the government arguing that those these particular documents trump attorney client privilege, trump rule of law, and this court is in the position, there is standing here under Castillo they meet the three-part test. Mr. Fluitt unilaterally brought appellant into this matter when he filed a motion seeking to compel them. Now he's arguing that they don't have a right to be in here. That's paradoxical. When an order affects a third party's interest, that party may appeal the order, including orders for discovery, if the third party has no other effective means of obtaining review. And that's what this court said in Chagra. And the person who holds the privilege can seek immediate review of the disclosure order on appeal. The government points the denial of the stay conflating denials of stay and plain error, which is what we're arguing because that's a standard of review here in terms of the legal error. That was not the standard of review that was used below. Thank you. We have your arguments. Thank you all for the briefing. In this case, we'll consider the matter submitted. Thank you.